UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#9 (9/16 hrg off)

CIVIL MINUTES - GENERAL

| Case No. | EDCV 19-1183 PSG (RAOx) | Date | September 6, 2019 |
|---|---|---|---|
| Title | Xochitl Lopez v. Adesa, Inc., et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):** The Court DENIES Plaintiff's motion to remand

Before the Court is a motion to remand filed by Plaintiff Xochitl Lopez ("Plaintiff"). *See* Dkt. # 9 ("*Mot.*"). Defendant Adesa, Inc. ("Defendant") opposes the motion, *see* Dkt. # 12 ("*Opp.*"), and Plaintiff timely replied, *see* Dkt. # 13 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the arguments in the moving, opposing, and reply papers, the Court **DENIES** Plaintiff's motion.

I. Background

On May 9, 2019, Plaintiff filed this wage and hour putative class action in Riverside County Superior Court. *See Complaint*, Dkt. # 1-1 ("*Compl.*"). In the complaint, Plaintiff asserts causes of action against Defendant for (1) failure to pay wages, *id.* ¶¶ 42–48; (2) failure to pay overtime wages, *id.* ¶¶ 49–53; (3) vacation pay forfeiture, *id.* ¶¶ 54–60; (4) failure to reimburse business expenses, *id.* ¶¶ 61–64; (5) failure to provide meal periods, *id.* ¶¶ 65–73; (6) failure to provide rest periods, *id.* ¶¶ 74–80; (7) failure to pay wages of terminated or resigned employees, *id.* ¶¶ 81–86; (8) failure to provide accurate itemized wage statements, *id.* ¶¶ 87–94; and (9) unfair competition, *id.* ¶¶ 95–103. On behalf of her proposed classes, Plaintiff seeks compensatory damages, economic damages, special damages, premium pay, wages, penalties, and attorneys' fees.[1]

---

[1] Plaintiff seeks to represent "all non-exempt employees employed by or formerly employed by" Defendant, and the class period is defined as the four years prior to the filing of the complaint through the date final judgment is entered. *See Compl.* ¶¶ 1, 3. Plaintiff has proposed seven classes: a class of employees who were not paid for all hours worked, an overtime wages class, a vacation wages class, a meal period class, a rest period class, a class of employees who have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | EDCV 19-1183 PSG (RAOx) | Date | September 6, 2019 |
|---|---|---|---|
| Title | Xochitl Lopez v. Adesa, Inc., et al. | | |

On June 26, 2019, Defendant removed the case to this Court. *See Defendant's Notice of Removal*, Dkt. # 1 ("*NOR*"). The Notice of Removal alleged federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). *Id.* ¶ 1; *see also* 28 U.S.C. § 1332(d). To satisfy CAFA's jurisdictional requirements, Defendant asserted that the proposed class contains at least 100 members, *NOR* ¶ 15; that minimal diversity exists because Plaintiff is a citizen of California and Defendant is a citizen of Delaware and Indiana, *id.* ¶¶ 9–14; and that the amount in controversy exceeds $5 million, *id.* ¶¶ 16–22. As Plaintiff did not expressly plead a specific amount of damages in her complaint, Defendant calculated its own estimate of the potential damages based on Plaintiff's allegations. *See generally NOR*.

Plaintiff now moves to remand, arguing that Defendant has failed to establish by a preponderance of the evidence that the amount in controversy exceeds $5 million. *See Mot.* 6:14–17. Specifically, Plaintiff takes issue with some of the assumptions Defendant made in its calculations and argues that they are not adequately supported by evidence. *See id.* 9:14–28, 13:6–18:17.[2]

II. Legal Standard

CAFA provides federal jurisdiction over class actions in which (1) the amount in controversy exceeds $5 million, (2) there is minimal diversity between the parties, and (3) the number of proposed class members is at least 100. 28 U.S.C. §§ 1332(d)(2), (d)(5)(B). "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court . . . [and] intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). While "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), "the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

---

separated from their employment and who have been provided inaccurate wages, and class of employees who have separated from their employment and who have not been paid all final legal wages. *See id.* ¶ 32.

[2] Plaintiff also argues that Defendant has not proven diversity of citizenship because Defendant's removal contains "only allegations of the Parties' citizenships," such as a citation to its own records to establish Plaintiff's citizenship. *Mot.* 18:18–25. However, a party's "allegation of minimal diversity may be based on 'information and belief.' [citations omitted]. The pleading 'need not contain evidentiary submissions.'" *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, (9th Cir. 2019). Further, Plaintiff does not contend either in her motion or reply that she is not a California citizen. Thus, the Court deems this point conceded.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | EDCV 19-1183 PSG (RAOx) | Date | September 6, 2019 |
|---|---|---|---|
| Title | Xochitl Lopez v. Adesa, Inc., et al. | | |

Under CAFA, a defendant removing a case must file a notice of removal containing a "short and plain statement of the grounds for removal." *Dart Cherokee*, 135 S. Ct. at 553. Additionally, the Supreme Court has clarified that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," unless the defendant's assertion is contested by the plaintiff. *Id.* at 554. Where, as here, a defendant's asserted amount in controversy is contested, "[e]vidence establishing the amount is required." *Id.* "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 550. Ultimately, the defendant bears the burden of proving that the amount in controversy is met. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013).

III. Discussion

Plaintiff first argues that Defendant made "conclusory assertions" in its notice of removal regarding the amount in controversy and failed to offer evidence to support the asserted $5 million jurisdictional amount. *See Mot.* 9:14–20, 11:6–11. However, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and "[e]vidence establishing the amount is required by § 1446(c)(2)(B) *only when* the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 135 S. Ct. at 554 (emphasis added). Thus, evidentiary support is not required in the notice of removal. Here, the notice of removal expressly alleges that the "amount in controversy in this putative class action conservatively exceeds $5,000,000, exclusive of interests and costs." *NOR* ¶ 18. The notice of removal discusses the claims alleged in the complaint and explains the components of Defendant's estimate of the amount in controversy. *See id.* ¶¶ 18–19; *Arias v. Residence Inn by Marriott*, No. 19-55803, 2019 WL 4148784, at *4 (9th Cir. Sept. 3, 2019). The Court finds this sufficient to state a plausible claim for CAFA jurisdiction.

However, as Plaintiff now contests the sufficiency of the amount in controversy, the Court must determine whether the jurisdictional requirement has been satisfied by a preponderance of the evidence. *See Dart Cherokee*, 135 S. Ct. at 554.

A. Meal Break Claim

The complaint alleges that Defendant had a "consistent policy" of requiring Plaintiff and the putative class members to work at least five hours without a meal break and failing to pay

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-1183 PSG (RAOx) | Date | September 6, 2019 |
|---|---|---|---|
| Title | Xochitl Lopez v. Adesa, Inc., et al. | | |

such employees one hour of pay for those violations. *Compl.* ¶ 15.[3] The complaint also states that Plaintiff and the putative class "were prohibited primarily on Wednesday's [sic] and Thursdays from taking meal and rest periods." *Id.* ¶ 26. The applicable section of the California Labor Code requires payment of one hour of pay in lieu of meal periods not provided by the employer, and the complaint asserts that "[t]hroughout the period applicable to this cause of action, Defendant failed to consistently allow and provide the meal periods required by applicable California law." *Id.* ¶ 67, 70.

Based on these allegations and others, Defendant analyzed shifts on Wednesdays and Thursdays only, and then restricted the data to potentially missed, late, or short first meal breaks. Defendant identified a total of 99,934 shifts fitting that description and calculated premiums owed by applying the individual employee's hourly rate, plus interest, for a total of $1,760,946. *See Declaration of Levon Massmanian*, Dkt. # 12-2 ("*Massmanian Decl.*"), ¶¶ 10–13.[4]

Plaintiff argues that Defendant's assumptions are arbitrary. *See, e.g., Mot.* 16:18–17:17; *Reply* 10:2–22. However, Defendant's calculations are limited and supported by allegations in the complaint. First, Defendant specifically identified shifts occurring on Wednesdays and Thursdays that appeared problematic with respect to a potential meal break issue, reasonably assuming violations and premiums owed where meal break issues were identified. *Opp.* 9:3–11; *Massmanian Decl.* ¶¶ 11–13. Defendant restricted the data to include only first shifts in which a meal break was not recorded, was commenced after the fifth hour of work, or was less than 30 minutes in duration. *Massmanian Decl.* ¶¶ 11–13. Although Plaintiff put at issue both first and second meal breaks for every shift worked, Defendant included first meal breaks only, and

---

[3] The complaint states that Defendant has had a "consistent policy" of requiring Plaintiff and Plaintiff Class: (1) to work at least five hours without a lawful meal period and failing to pay such employees one hour of pay at the employees' regular rate of compensation for each workday that meal period is not provided; (2) to work through their daily meal period(s), or work an unlawful 'on-duty meal period;' (3) were severely restricted in their ability to take a meal period; (4) were not allowed to leave the workplace during the alleged meal period; (5) were provided with lunches after the end of the fifth hour. *Id.* ¶ 15.

[4] The numbers used in Defendant's notice of removal differ from those in the Declaration of Levon Massmanian, which was submitted by Defendant alongside its opposition and explains Defendant's calculations based on employee lists, timekeeping data, and payroll data. The Court uses the calculations provided in the declaration, as those constitute Defendant's evidence. *See Dart Cherokee*, 135 S. Ct. at 554 (When "a defendant's assertion of the amount in controversy is challenged. . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."); *Opp.* 8:16–20 ("In light of Dart Cherokee, Defendant has engaged in a more thorough analysis to put forth summary-judgment-type evidence to support its argument.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | EDCV 19-1183 PSG (RAOx) | Date | September 6, 2019 |
|---|---|---|---|
| Title | Xochitl Lopez v. Adesa, Inc., et al. | | |

although the complaint's wording indicates there may have been meal and rest break violations on days other than Wednesday and Thursday, Defendant limited its calculation to those two days only. *Opp.* 9:3–11; *Compl.* ¶ 26.

Finally, while not required, Plaintiff has not offered any better estimate of the alleged violation rate, despite the fact that she most likely knows at least roughly how often she was not afforded the required meal breaks. *See Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14–cv–09809–SVW–PJW, 2015 WL 898512, at *3 (C.D. Cal. 2015) ("Notably, Plaintiff fails to assert any different rate of violation or to submit any evidence indicating a contrary rate of violation. Plaintiff does not even submit her own declaration stating that she experienced less frequent rates of violation than those asserted by Defendants."); *Roa v. TS Staffing Servs., Inc.*, No. 2:14–cv–08424–ODW (MRWx), 2015 WL 300413, at *2 (C.D. Cal. 2015).

The Court concludes that Defendant has shown by a preponderance of the evidence that $1,760,946 is in controversy on the meal break claim.

B.      Rest Break Claim

The complaint alleges that Defendant had a "consistent policy" of failing to provide Plaintiff and putative class members rest periods of at least ten minutes per four hours worked or major fraction thereof and "failing to pay such employees one hour of pay at the employees' regular rate of compensation for each workday that the rest period is not provided" as required by California law. *Compl.* ¶ 15. In addition, the complaint alleges that Defendant "instituted a policy" whereby employees were required to work through breaks, and that on such days "third and fourth rest periods were not provided" and Defendant "did not pay premium pay for not providing rest periods." *Compl.* ¶ 26.

Based on these allegations and others, Defendant first limited the data to Wednesday and Thursday shifts in excess of 3.5 hours, for a total of 236,252 shifts. Defendant then calculated a low, in which only half of the identified shifts were calculated using the hourly rate of each employee for a total of $2,168,436, and a high in which each shift was calculated using the hourly rate of each employee for a total of $4,323,951. *See Massmanian Decl.* ¶¶ 14–15.

Plaintiff argues that Defendant has arbitrarily assumed "a one hundred percent (100%) violation rate," in that Defendant has assumed violations on all applicable shifts on Wednesdays and Thursdays. *Mot.* 16:18–17:17; *Reply* 8:5–9:12. However, an assumption of violations on Wednesdays and Thursdays for all individuals fitting the class description is reasonable, based

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-1183 PSG (RAOx) | Date | September 6, 2019 |
|---|---|---|---|
| Title | Xochitl Lopez v. Adesa, Inc., et al. | | |

on the wide-ranging allegations in the complaint of Defendant's "consistent policy" of failing to provide breaks, and statement that these breaks were denied "primarily on Wednesday's [sic] and Thursdays," suggesting there may have been violations on other days, as well. *See Compl.* ¶¶ 15, 26.

Courts have approved similar assumptions based on allegations like those presented here. For example, in *Mejia v. DHL Express (USA), Inc.*, the Court found a 100 percent violation rate to be a reasonable assumption based on allegations that Defendant "adopted and maintained uniform policies, practices and procedures" that caused the purported violations of California's rest period law. No. 15-0890 GHK (JCx), 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015). The Court concluded it was not unreasonable "to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied." *Id*. This Court has concluded that a complaint alleging a "uniform" practice of meal and rest period violations supported a 60% violation rate (three rest and meal period premiums per work week) for every employee at the defendant's facility, and stated that a "100 percent violation rate is not an unreasonable assumption" where a plaintiff alleges that the defendant "'adopted and maintained uniform policies, practices and procedures' that caused violations." *Alvarez v. Office Depot, Inc.*, No. CV 17–7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. 2017); *see also Unutoa*, 2015 WL 898512, at *2 (finding allegations of a "uniform policy" allowed for a 100% violation rate); *Duberry v. J. Crew Grp., Inc.*, No. CV 14-8810 SVW (MRWx), 2015 WL 4575018, at *6 (C.D. Cal. July 28, 2015) (finding that allegations of a "uniform policy" and "systematic scheme" justified assuming a 100 percent violation rate).

Plaintiff also cites to *Ibarra*, in which the court suggested that a defendant may not be permitted to assume a violation on "each and every shift" worked where the complaint alleged that plaintiff worked overtime hours without pay on "multiple occasions," suggesting violations occurred several times but not on every shift. 775 F.3d at 1198–99. Here, Defendant does not assume a violation on "each and every shift" worked, but rather, as described above, on each Wednesday and Thursday shift, based on language in the complaint. *See id.* There are not qualifying words such as that violations occurred "often" or "sometimes" or "from time to time" on those days, to suggest less than uniform violations. Removing defendants must inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove plaintiff's case for him by proving the actual rates of violation. *See Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010). As here, the parties are permitted to rely on reasonable assumptions, and "an assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 2019 WL 4148784, at *4. Moreover, the amount in controversy "reflects the *maximum* recovery the plaintiff could reasonably recover." *Id.* at *5; *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | EDCV 19-1183 PSG (RAOx) | Date | September 6, 2019 |
|---|---|---|---|
| Title | Xochitl Lopez v. Adesa, Inc., et al. | | |

(explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them"). Finally, Plaintiff has again failed to offer any better estimate of the alleged violation rate.

The Court concludes that Defendant has shown by a preponderance of the evidence that $4,323,951 is in controversy on the rest break claim.

### C. Waiting Time Penalties and Wage Statement Claim

The complaint defines a subclass of all persons who separated from employment with Defendant within three years of the filing of the complaint, have not been paid all final legal wages, and are owed thirty days waiting time penalties. *Compl.* ¶ 32. The complaint asserts that putative class members are owed wages including "compensation for unprovided rest periods and unprovided meal periods, and/or compensation for unlawful deductions" and that affected members have not received payment and are thus entitled to thirty days' wages as a penalty. *Id.* ¶¶ 83–84.

Based on these allegations and others, Defendant limited its calculation of waiting time penalties to include only non-exempt terminated employees within the specified time frame with a potential first meal break issue on a Wednesday or Thursday. *Massmanian Decl.* ¶ 16. Using this method, Defendant identified 304 employees fitting that description, and calculated penalties owed by applying the employee's final hourly rate at termination and average daily hours worked for 30 days, for a total of $949,278. *Id.* ¶ 17.

The complaint also defines a subclass of all persons employed within one year of the filing of the complaint who are owed penalties for having been provided inaccurate wage statements. *Compl.* ¶ 32. The complaint alleges that Defendant willfully refused to furnish to Plaintiff accurate itemized wage statements upon payment of wages, and that Defendant's records do not accurately reflect where Plaintiff and putative class members "worked during their meal and/or rest breaks." *Id.* ¶¶ 4, 92. The complaint also states that Defendant intentionally failed to comply with California law "on each and every wage statement that should have been provided to Plaintiff and the Plaintiff Class." *Id.* ¶ 88. An employee subject to such a violation may recover $50 for the initial pay period in which a wage statement violation occurred and $100 per employee for each violation in a subsequent pay period, not to exceed a maximum aggregate penalty of $4,000 per employee. *Id.* ¶ 93.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 19-1183 PSG (RAOx) | Date | September 6, 2019 |
|---|---|---|---|
| Title | Xochitl Lopez v. Adesa, Inc., et al. | | |

Defendant limited its calculations to include only pay periods where a potential first meal break issue occurred on a Wednesday or Thursday. *Massmanian Decl.* ¶ 18. Defendant then calculated $50 per person for the first pay period with a potential issue, and $100 for subsequent pay periods with a potential issue up to a maximum of $4,000 per person. *Id.* ¶ 19. Using this method, Defendant calculated a total of $1,646,900 for inaccurate wage statement penalties. *Id.*

Plaintiff argues again that Defendant has incorrectly relied on a one hundred percent violation rate. *Mot.* 14:17–22; *Reply* 10:25–11:11. However, Defendant limited its calculations as to both inaccurate wage statement and waiting time penalties to include only shifts with a potential first meal break issue on Wednesday or Thursday, thus grounding its calculations in the allegations in the complaint. *Opp.* 10:5–11:14; *See Compl.* ¶¶ 83, 92. This is unlike *Garibay v. Archstone Communities LLC*, relied on by Plaintiff, in which the defendant assumed "that every single member of the class would be entitled to recover penalties for every single pay period," and that "each [terminated] employee would be entitled to the maximum statutory penalty." 539 Fed. Appx. 763, 764 (9th Cir. 2013); *see also Weston v. Helmerich & Payne Inter. Drilling Co.*, No. 1:13-CV-01092-LJO, 2013 WL 5274283 at *6 (E.D. Cal., Sept. 17, 2013) (where the defendant provided no "factual underpinning" for its assumption of one meal and rest break violation per week). Assumptions cannot be "pulled out of thin air," as in those cases, but parties are permitted to rely on reasonable assumptions, and "an assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 2019 WL 4148784, at *4. Here, Defendant has limited its data to reflect the allegations in the complaint – such as penalties based on meal and rest break violations occurring on Wednesdays and Thursdays. The complaint asserts that Defendant has knowingly and intentionally failed to comply with California law on "each and every wage statement that should have been provided to Plaintiff and Plaintiff Class," making an assumption of a violation of each applicable employee's wage statement a reasonable assumption. *See Compl.* ¶ 88. In addition, the complaint's waiting time penalties piggyback onto the allegations of missed meal and rest break claims and others, each of which assert widespread violations. *See Opp.* 7:14–17; *Lucas v. Michael Kors (USA), Inc.*, No. CV 18-1608-MWF (MRWx), 2018 WL 2146403, at *9 (C.D. Cal. May 9, 2018) ("Assuming that it is true that Defendants had a 'consistent policy' of failing to provide meal/rest breaks, as discussed *supra*, then the wage statements that Defendants provided would necessarily have been inaccurate 100% of the time, given that each wage statement would have failed to include compensation for the missed meal/rest break."). Plaintiff further argues that Defendant assumes "all non-exempt employees" that separated from employment with Defendant in the last three years were putative class members. *Reply* 11:4–14. However, Defendant has based its numbers on pay periods where a potential first meal break issue occurred on a Wednesday or Thursday, reasonably extrapolating violation rates from the allegation in the complaint. Finally, Plaintiff again fails to offer better estimates of the violation rates.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | EDCV 19-1183 PSG (RAOx) | Date | September 6, 2019 |
|---|---|---|---|
| Title | Xochitl Lopez v. Adesa, Inc., et al. | | |

The Court concludes that Defendant has shown by a preponderance of the evidence that $949,278 is in controversy for waiting time penalties, and that $1,646,900 is in controversy for inaccurate wage statement penalties.

E.  Attorneys' Fees

Plaintiff states that the two-way attorney fee shifting provision does not apply to meal and rest break claims under California law and thus concludes that attorneys' fees should be excluded from the amount in controversy. *Mot.* 17:20–28, 18:9–10. However, Plaintiff brings six claims other than the meal and rest break claims: unpaid wages, unpaid overtime, vacation pay, inaccurate wage statements, waiting time penalties and unfair competition. Each of these claims may permit attorneys' fees, and Plaintiff's complaint requests such fees. *Opp.* 11:16–23. Defendant does not assign a value to potential attorneys' fees because the $5 million jurisdictional amount is met without accounting for such fees. The Court does not address attorneys' fees, because it is not necessary to reach the amount in controversy.

Based on just four of Plaintiff's claims, Defendant's calculations put the amount in controversy at $8,681,075, well above the $5 million requirement. *Massmanian Decl.* ¶ 20. Even using the "low" estimate of the amount in controversy for rest break violations, the total is above $5 million. *Id.* The Court concludes that Defendant has shown by a preponderance of the evidence that more than $5 million is in controversy. The Court therefore has jurisdiction under CAFA. Plaintiff's motion to remand is **DENIED**.

IV.  Conclusion

For the foregoing reasons, Plaintiff's motion to remand is **DENIED**.